## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| TAX ANALYSTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Civil Action No. 05-0934 (ESH)** |
| | ) |
| INTERNAL REVENUE SERVICE, | ) |
| | ) |
| Defendant. | ) |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Tax Analysts filed this action under Internal Revenue Code § 6110, 26 U.S.C. § 6110, and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking disclosure of numerous documents withheld by the Internal Revenue Service ("IRS"). Before the Court are two issues: first, whether written advice rendered to regional employees by attorneys in the IRS Office of Chief Counsel's national office in less than two hours is "Chief Counsel advice" falling within the public inspection requirements of § 6110; and second, whether the Office of Chief Counsel properly withheld a number of requested documents under the deliberative process privilege of 5 U.S.C. § 552(b)(5). As the Court answers both of these questions in the affirmative, it will grant plaintiff's Cross Motion for Summary Judgment with respect to its § 6110 claim and grant defendant's Motion for Summary Judgment with respect to Exemption 5.

## BACKGROUND

The genesis of this case lies in a FOIA request made by plaintiff more than a decade prior to the request at issue here. (*See* Def.'s Mem. in Supp. at 2.) In 1993, Tax Analysts asked that

the IRS disclose numerous Field Service Advice Memoranda ("FSAs"), which are documents prepared by "[a]ttorneys in the national office of the Office of Chief Counsel . . . in response to requests from field personnel . . . for legal guidance, usually with reference to the situation of a specific taxpayer." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 609 (D.C. Cir. 1997).[1]  After the agency's denial of the request and an unsuccessful series of administrative appeals, Tax Analysts filed suit under 5 U.S.C. § 552.  *Tax Analysts*, 117 F.3d at 608-9.  Addressing the IRS' appeal of a district court order requiring disclosure of the documents following the redaction of return information and attorney work product, the D.C. Circuit held that as "no blanket exemption applie[d] to all of the requested FSAs," they had to be released "except to the extent that they are protected by some specific FOIA exemption." *Id.* at 620.  In reaching this conclusion, the Court rejected the agency's argument that the legal analyses contained in the contested documents constituted "return information" exempt from disclosure under 26 U.S.C. § 6103(b)(2), noting the absence of any relevant difference between FSAs and the Technical Advice Memoranda for which disclosure was already provided under 26 U.S.C. § 6110.  *Id.* at 615-16.  The Court also refused to hold the documents exempt from disclosure under the deliberative process privilege of § 552(b)(5), determining that the memoranda -- which "[r]epresent[ed] the considered view of the Chief Counsel's national office on significant tax law issues" -- were "themselves statements of an agency's legal position and, as such, [could not] be viewed as predecisional." *Id.* at 617.

---

[1]As noted by the Court of Appeals, "[a]lthough the Chief Counsel is the chief legal officer for the IRS . . . , the Office of Chief Counsel is not part of the IRS.  The Chief Counsel is an Assistant General Counsel of the Treasury Department, appointed by the President with the advice and consent of the Senate." 117 F.3d at 608 (citing 31 U.S.C. § 301(f)(2)).  Under Treasury Department regulations, however, the Office is treated as part of the IRS for FOIA purposes. *See id.* at 609 (citing 31 C.F.R. § 1.1).

The D.C. Circuit's opinion in *Tax Analysts* emphasized concerns regarding the privacy of those taxpayers addressed in field service advice. *See* H.R. Conf. Rep. No. 105-599, at 298 (1998).  Unlike IRS rulings, determination letters, and technical advice memoranda -- all of which were included within the existing version of 26 U.S.C. § 6110 -- field service advice was not then subject to procedures by which taxpayers could seek redaction of their private information. *Id.*  Congress remedied this in the Internal Revenue Service Restructuring and Reform Act of 1998,  Pub. L. No. 105-206, 112 Stat. 685 (1998), concluding in an accompanying Conference Report that while "written documents issued by the National Office of Chief Counsel to its field components and field agents of the IRS should be subject to public release in a manner similar to technical advice memoranda or other written determinations" in order to "increase the public's confidence that the tax system operates fairly and in an even-handed manner with respect to all taxpayers . . . , the privacy of the taxpayer who is the subject of the advice must be protected."  H.R. Conf. Rep. No. 105-599, at 299.  This protection was brought about by subjecting a new category of written determinations -- "Chief Counsel advice" -- to public inspection "in a manner generally consistent with the mechanism of section 6110." *Id.*

Section 6110(i) defines "Chief Counsel advice" as "written advice or instruction, under whatever name or designation, prepared by any national office component of the Office of Chief Counsel" that "is issued to field or service center employees of the Service or regional or district employees of the Office of Chief Counsel" and "conveys . . . any legal interpretation of a revenue provision[,] . . . any Internal Revenue Service or Office of Chief Counsel position or policy concerning a revenue provision[,] or . . . any legal interpretation of State law, foreign law, or other Federal law relating to the assessment or collection of any liability under a revenue

provision." 26 U.S.C. § 6110(i)(1)(A).[2]  Under the statute, all documents qualifying as Chief

Counsel advice are subject to "public inspection" following the deletion of "the names, addresses,

and other identifying details of the person to whom the written determination pertains" and other

identified persons.  *Id.* §§ 6110(a); 6110(c)(1); 6110(i)(3)(A).  Section 6110 also grants the

Secretary discretion to redact portions of otherwise public advice in accordance with the

exemptions provided under the FOIA.  *Id.* § 6110(i)(3)(B) (citing 5 U.S.C. §§ 552(b), 552(c)).

The addition of Chief Counsel advice to § 6110 removed it from FOIA's reach, since § 6110

became the exclusive means for obtaining access to these materials.  *See  id.* § 6110(m) ("Except

as otherwise provided in this title, or with respect to a discovery order made in connection with a

judicial proceeding, the Secretary shall not be required by any Court to make any written

determination or background file document open or available to public inspection, or to refrain

from disclosure of any such documents.").

Following the enactment of § 6110(i), the Office of Chief Counsel began to instruct its

attorneys on the contours of this provision.  In a September 1998 memorandum, the Office

addressed the circumstances under which an emailed response to an inquiry from the field would

amount to Chief Counsel advice.  (*See* Butler Decl. ¶¶ 10-11 and Ex. 8 at 3.)  Calling upon an

existing business rule that classified as "informal" all advice rendered in less than two hours, the

memorandum indicated that emails requiring less than two hours' preparation were not Chief

Counsel advice.  (Butler Decl. Ex. 8 at 3.)  If, however, "the time expended in researching and

preparing an e-mail response consume[d] two or more hours, or . . . local office practice [was] to

---

[2]The statute defines "revenue provision" as including "any existing or former internal
revenue law, regulation, revenue ruling, revenue procedure, other published or unpublished
guidance, or tax treaty, either in general or as applied to specific taxpayers or groups of specific
taxpayers." 26 U.S.C. § 6110(i)(1)(B).

open a case file because of the significance of the matter, then the e-mail [was] not informal advice and [was] CCA." (*Id*.)  Though the Office acknowledged that such a standard might appear an "artificial" means of identifying those email messages subject to public inspection under § 6110(i), the memorandum stated that "[t]he legislative history to section [6110] clarifies that informal advice is not considered to be CCA" and noted that the two-hour rule had "historically been the touchstone for determining, for numerous business reasons, whether advice is considered 'informal' or 'formal.'" (*Id*.)  As further explained by Associate Chief Counsel Deborah Butler's declaration in this case, matters "simple enough to be handled in less than two hours" could be "informally" resolved without "going through the process of 'issuance'" -- that is, "proposing draft advice in memorandum form and obtaining approval from [a] manager[]." (Butler Decl. ¶ 11.)

On February 19, 2004, the Office further specified its procedures under § 6110(i) with the publication of Notice CC-2004-012.  (*Id*. ¶ 17 and Ex. 12.)  The Notice reiterated the two-hour standard, stating that "legal advice that can be rendered in less than two hours by a National Office component . . . [is] informal in nature and need not be released to the public . . . even if it is reduced to writing." (*Id*. Ex. 12 at 5 ("A12").)  The Notice went on to clarify the reach of this rule, specifying that a "background memorandum" prepared in another case and provided to the field after less than two hours' work on a request was not Chief Counsel advice and could therefore be withheld from public inspection.  (*Id*. at 6 ("A16").)

Two months after the publication of Notice CC-2004-012, Tax Analysts wrote Associate Chief Counsel Butler with questions regarding the legal basis and administration of the two-hour standard, including the treatment of background memoranda under the rule.  (Compl. ¶ 13; Def.'s

Statement of Material Facts as to which There Is No Material Dispute ¶ 5 ("Def.'s Stmt.").)

When the letter went unanswered, plaintiff submitted a June 7, 2004 request asking that all

written advice that had "taken the place of FSAs . . . and . . . not been made publicly available

under § 6110(i) or under its transition rules," all written advice withheld on the ground that it had

been prepared in less than two hours, and all written advice withheld as "pre-existing legal

memorand[a]" be disclosed in accordance with the public inspection requirements of § 6110.

(Def.'s Stmt. ¶ 6.)  The same letter included a FOIA request for all IRS records, created before

February 19, 2004, describing, referencing, or containing precursors to certain sections of Notice

CC-2004-012, as well as all records providing "guidance or instruction . . . on how to carry out

th[ose] provisions."  (*Id.*)  Plaintiff later submitted an April 8, 2005 letter expanding its request to

include any such records prepared or issued by the date of the letter's receipt.  (Compl. ¶ 16-17;

Def.'s Stmt. ¶ 44.)

        The Office of Assistant Chief Counsel ultimately provided plaintiff with six documents

pertaining to its FOIA request for precursors to Notice CC-2004-012: the agency's September 21,

1998 memorandum discussing the treatment of emails under § 6110(i); a later memorandum

reiterating the relevant contents of the September memorandum; an October 8, 2000 Chief

Counsel Desk Guide; a July 18, 2001 Business Rules Handbook; a November 21, 2001 case

management appendix; and Notice CC-2002-026, a prior document addressing Chief Counsel

advice.  (Def.'s Stmt. ¶ 45.)  All other materials responsive to plaintiff's FOIA request were

withheld under the deliberative process privilege of 5 U.S.C. § 552(b)(5).  (*See* Drain Decl.

¶¶ 12-15.)

Following the agency's limited disclosure, representatives of both parties held an August 19, 2005 meeting in an attempt to negotiate a settlement of the dispute.  (Pl.'s Stmt. ¶ 57.) There, IRS officials provided plaintiff's counsel with representative samples of the kinds of "informal" documents that had been withheld from disclosure under § 6110.  (*Id.*)  While counsel were not given copies of the materials, they were provided with a "table of contents" outlining the eight kinds of documents at issue -- handwritten and typewritten recordations of telephonic advice; informal advice sheets that accompanied emailed advice; emailed answers to emailed questions in "question and answer" format; exchanges involving multiple emails and providing advice; informal advice provided in an email offering a link to existing public material; emailed requests and advice relating to open cases; and formal requests resulting in the opening of a case but nonetheless answered "informally."  (Hitchcock Decl. ¶ 4.)

Plaintiff filed this action on May 10, 2005, seeking the release under § 6110 of "all two-hour CCA withheld from disclosure and . . . all CCA withheld from disclosure on the ground that the document transmitted was a pre-existing legal memorandum," as well as the release under FOIA of all documents underlying Notice CC-2004-012 or offering Office of Chief Counsel attorneys guidance on its proper application.  (Compl. ¶¶ 15, 21.)  On November 22, 2005, defendant filed a motion for summary judgment, contending that its nondisclosure of the contested materials was appropriate as the "informal advice" covered by the two-hour standard of Notice CC-2004-012 was not "issued" to the field within the meaning of § 6110(i), and the documents withheld under FOIA were exempt from disclosure under the deliberative process privilege of § 552(b)(5).  (Def.'s Mem. in Supp. at 20-21.)[3]  Tax Analysts responded by moving

---

[3]As explained by defendant, there were no documents responsive to plaintiff's request for materials providing guidance on the application of the Notice.  (Def.'s Mem. in Supp. at 21.)

for a *Vaughn* index of all documents at issue in the case.  (*See* Pl.'s Mot. for a *Vaughn* Index.)

The Court denied plaintiff's motion in a January 9, 2006 Memorandum Opinion on the grounds

that such an index was not required to resolve plaintiff's § 6110 request, and in lieu of a *Vaughn*

index, it ordered the IRS to produce those documents withheld under § 552(b)(5) for *in camera*

review.  *Tax Analysts v. Internal Revenue Serv.*, No. 05-cv-0934 (D.D.C. Jan. 9, 2006) (Mem.

Op.).  The Court has reviewed the submitted documents, which number over five-hundred pages,

and will now turn to the merits of this dispute.

## ANALYSIS

**I.      IRS' Two-Hour Rule**

        The first issue to be addressed is whether the agency properly interpreted the definition of

"Chief Counsel advice" in § 6110(i) to exclude written advice prepared in less than two hours,

including pre-existing background memoranda.  In addressing this issue, it is helpful to first

determine the appropriate standard of review and to then examine defendant's interpretation in

light of the statutory language.

**A.      Standard of Review**

        In defending the definition of Chief Counsel advice articulated in Notice CC-2004-012,

the IRS argues at some length regarding the amount of deference owed to its interpretation of

§ 6110.  (*See* Def.'s Mem. in Supp. at 13-17; Def.'s Opp'n at 2-4.)  The resolution of this question

turns on familiar principles.  Under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467

U.S. 837 (1984), the fundamental question for a court reviewing "an agency's construction of the

statute which it administers" is "whether the agency's answer is based on a permissible

construction of the statute."  *Id.* at 842-43.  This level of deference is limited, however, to those

cases where "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). "Otherwise, the interpretation is 'entitled to respect' only to the extent it has the 'power to persuade.'"  *Gonzales v. Oregon*, 546 U.S. __, 126 S.Ct. 904, 914-15 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

   In its opposition to plaintiff's Cross Motion for Summary Judgment, defendant argues incongruously that "*Chevron* clearly applies to a case, such as this one, involving an agency's construction of a statute which it administers" but also admits that "the two hour practice codified in CC Notice 2004-012 is not entitled to substantial deference under *Chevron*" and is therefore "'entitled to respect'" under the rule of *Skidmore*.  (Def.'s Opp'n at 3-4.)  Defendant's latter concession is correct.  Despite language in the Conference Report indicating an "expect[ation]" that regulations be issued with regard to Chief Counsel advice, H.R. Conf. Rep. No. 105-599, at 301 ("The Secretary is expected to issue regulations to clarify the distinction between issuance as it applies to Chief Counsel Advice and as it applies to other documents disclosed under section 6110."), the interpretation at issue here is not a "fruit[] of notice-and-comment rulemaking."  *See Mead*, 533 U.S. at 230.  Rather, the interpretation is contained in a notice to Office of Chief Counsel attorneys issued over the signature of Associate Chief Counsel Deborah Butler and later incorporated into the agency's Chief Counsel Directives Manual.  (*See* Butler Decl. Ex. 12 and Ex. 14 at 42-50.)  The IRS therefore correctly concedes that these notices do not carry the force of law.  (*See* Def.'s Opp'n at 3-4.)  *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters -- like interpretations

9

contained in policy statements, agency manuals, and enforcement guidelines, all of which lack

the force of law -- do not warrant *Chevron*-style deference."); *Public Citizen, Inc. v. U.S. Dep't of*

*Health and Human Servs.*, 332 F.3d 654, 659 (D.C. Cir. 2003) (declining to apply

*Chevron* deference to an interpretation included within an agency manual rather than

promulgated through the exercise of the agency's delegated rulemaking authority).  Accordingly,

in considering the proper reach of § 6110, the Court must defer to the interpretation proffered by

the agency only to the extent it finds that construction to be persuasive.

> **B.      Section 6110(i)**

Defendant's arguments in support of Notice CC-2004-012 are premised on the claim that

written advice rendered by national attorneys in less than two hours' time is not "issued" to

regional employees within the meaning of § 6110(i)(1)(A)(i), and does not therefore constitute

Chief Counsel advice subject to the public inspection requirements of the statute.  (Def.'s Mem.

in Supp. at 17; Def.'s Opp'n at 10.)   In making this contention, defendant relies on two

statements in the Conference Report that accompanied § 6110: first, that "issuance occurs . . .

[w]ith respect to Chief Counsel Advice . . . when the Chief Counsel Advice has been approved

within the national office component of the office of Chief Counsel in which the Chief Counsel

Advice was proposed, signed by the person authorized to do so (usually the Assistant Chief

Counsel or a Branch Chief), and sent to the field[;]" and second, that "Chief Counsel Advice

does not include written recordations of informal telephonic advice by the National Office of

Chief Counsel to field personnel of either the IRS or the Office of Chief Counsel."  H.R. Conf.

Rep. No. 105-599, at 300.  According to defendant, Notice CC-2004-012 does no more than

"adopt[] the interpretation of the word 'issue' provided by Congress in its legislative history," thus

honoring the legislature's "manifest intent" that only formal advice -- which, unlike informal

materials, "[r]epresent[s] the considered view of the Chief Counsel's national office on

significant tax law issues" -- must be disclosed as Chief Counsel advice.  (Def.'s Opp'n at 9-10;

Def.'s Mem. in Supp. at 3, 18 (quoting *Tax Analysts*, 117 F.3d at 617 ).)

Despite defendant's citation to the legislative history, the two-hour standard of Notice

CC-2004-012 cannot be reconciled with the definition of Chief Counsel advice established by

Congress in § 6110.  "It is well established that 'when the statute's language is plain, the sole

function of the courts -- at least where the disposition required by the text is not absurd -- is to

enforce it according to its terms.'"  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)

(quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)

(internal quotation marks omitted)).  The statutory definition of "Chief Counsel advice" is

indisputably broad, encompassing all nationally-prepared "written advice or instruction, *under*

*whatever name or designation*," that "is issued to field or service center employees of the Service

or regional or district employees of the Office of Chief Counsel" and "conveys . . . *any* legal

interpretation of a revenue provision; . . . *any* Internal Revenue Service or Office of Chief

Counsel position or policy concerning a revenue provision; or . . . *any* legal interpretation of

State law, foreign law, or other Federal law relating to the assessment or collection of any

liability under a revenue provision."  26 U.S.C. § 6110(i)(1)(A) (emphasis added).  Nothing in

this language suggests a temporal restriction of the sort articulated in Notice CC-2004-012.  Nor

is the definition amenable to any reading that hinges disclosure on the "formality" of the written

advice.  To the contrary, the statute includes documents that convey "any legal interpretation of a

revenue provision," as well as those that state an agency "position or policy concerning a revenue

11

provision," within the bounds of "Chief Counsel advice."  *Id.*  Thus, in attempting to

circumscribe its disclosure obligations so as to exclude all written advice provided to the field

but regarded as too "informal" based on a two-hour rule, the Office of Chief Counsel has ignored

the plain language of § 6110.[4]

Moreover, defendant's rewrite of the statute by reference to the Conference Report must

be rejected, for courts "'do not resort to legislative history to cloud a statutory text that is clear.'"

*AT&T Corp. v. FCC*, 317 F.3d 227, 235 (D.C. Cir. 2003) (quoting *Ratzlaf v. United States*, 510

U.S. 135, 147-48 (1994)); *see also*, *e.g.*, *United States ex rel. Totten v. Bombardier Corp.*, 380

F.3d 488, 494 (D.C. Cir. 2004) (noting that "resort to legislative history is not appropriate in

construing plain statutory language"); *Consumer Electronics Ass'n v. FCC*, 347 F.3d 291, 298

(D.C. Cir. 2003) (noting that "only rarely have we relied on legislative history to constrict the

otherwise broad application of a statute indicated by its text" as "the Supreme Court has

consistently instructed that statutes written in broad, sweeping language should be given broad,

sweeping application"); *United Air Lines, Inc. v. CAB*, 569 F.2d 640, 647 (D.C. Cir. 1977)

(noting that there is "no mandate in logic or in case law for reliance on legislative history to reach

a result contrary to the plain meaning of a statute, particularly where that plain meaning is in no

way unreasonable" and holding that "[h]ad Congress intended the 1969 amendment to apply only

---

[4]Defendant's attempt to obscure the definition of Chief Counsel advice by noting the
word "issued" is itself amenable to varying meanings is without merit.  (*See* Def.'s Opp'n at 4-6.)
As recently noted by the Supreme Court, "[i]n determining whether Congress has specifically
addressed the question at issue, a reviewing court should not confine itself to examining a
particular statutory provision in isolation. The meaning -- or ambiguity -- of certain words or
phrases may only become evident when placed in context."  *FDA v. Brown & Williamson
Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (citing *Brown v. Gardner*, 513 U.S. 115, 118
(1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context.")).

to [certain] transfers  . . . , it could easily have used language that was so limited, yet it chose language that was considerably broader").

Defendant's position also lacks persuasive force when one examines the basis for the adoption of a two-hour rule.  This standard, which even the Office acknowledged in a September 1998 memorandum "may appear to be artificial for determining whether [an] email writing is CCA," (Butler. Decl. Ex. 8 at 3), is itself an irrational means of isolating those materials representing the "considered view" of the National Office.   (*See* Def.'s Mem. in Supp. at 17, 20.) First, the terms of Notice CC-2004-012 belie the notion that the formality of a written response is dictated by the amount of time spent in its preparation, as they elsewhere provide that there is no requirement that a "formal memorandum" be prepared "[o]nce . . . more than two hours [is spent] responding to a request from a Field office for legal advice."  (Butler Decl. Ex. 12 at 6 ("A15").) *See Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) ("A long line of precedent has established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.").  Moreover, the agency's Chief Counsel Directives Manual requires each component of the Office to "ensure that the legal advice it renders accurately reflects the position of the Office," and directs Chief Counsel attorneys to consult the relevant authorities "where there is any doubt regarding the position of the Service." (Butler Decl. Ex. 14 at 1 (CCDM § 33.1.1.1(2)).)  "Informal advice" does not fall beyond the scope of these mandates.  (*Id.*)  To the contrary, attorneys who provide "informal assistance" are required to have the substance of their advice "reviewed and approved by a manager," correcting any discovered errors "promptly."  (*Id.* at 5 (CCDM § 33.1.2.1(1)).)  The incompatibility of the two-hour standard and the purposes assigned to it in this case is by no means surprising, for,  as

defendant concedes, the standard was first introduced in 1996 "as part of the implementation of a new information management system to track work."  (*See* Def.'s Mem. in Supp. at 4.)

Because § 6110 requires disclosure of the written advice at issue in this case, the Office of Chief Counsel must make the contested materials available for public inspection in accordance with the statute's procedures.

## II.    FOIA's Exemption 5

FOIA requires disclosure of requested "agency records" -- including "[a]ny reasonably segregable portion of a record" -- absent a demonstration by the government that the materials fall within one of nine exemptions.  *See* 5 U.S.C. §§ 552(a)(3), 552(b); *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 128 (D.C. Cir. 2005).  Under § 552(b)(5), the disclosure requirements of FOIA are inapplicable to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id.*  This provision has long been interpreted to include a deliberative process privilege serving a number of related ends, among them:

> assur[ing] that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; . . . protect[ing] against premature disclosure of proposed policies before they have been finally formulated or adopted; and . . . protect[ing] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege therefore shields from disclosure records the government demonstrates to be both "'predecisional'" -- that is, "generated *before* the adoption of

14

an agency policy" -- and "'deliberative,'" -- that is, "reflect[ive] [of] the give-and-take of the consultative process." *Id.* "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* at 866.  "Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material." *Judicial Watch, Inc. v. Department of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam)).

Plaintiff's FOIA request included two parts: a request for documents "which include descriptions of, or references to, or are precursors of [certain] provisions of CC-Notice 2004-012," as well as a request for any records "that provide guidance or instruction to attorneys of OCC on how to carry out th[ose] provisions."  (Def.'s Stmt. ¶ 6.)  In response, the Office of Chief Counsel released six documents responsive to the first portion of plaintiff's request, each a precursor to Notice CC-2004-012.  (Def.'s Stmt. ¶ 45.)  In a November 17, 2005 declaration, Office of Chief Counsel attorney Shannon Drain indicated that the agency had no records responsive to the second portion of plaintiff's request and that all of the remaining documents responsive to the request's first portion were withheld under Exemption 5.  (*See* Drain Decl. ¶¶ 5-6, 12.)

In denying plaintiff's Motion for a *Vaughn* Index, the Court ordered the IRS to produce those documents withheld under Exemption 5 for *in camera* review.  *See Tax Analysts v. Internal Revenue Serv.*, No. 05-cv-0934 (D.D.C. Jan. 9, 2006) (Mem. Op.).  Having examined the materials, the Court is satisfied that the withheld documents are both predecisional and deliberative.  As described in the Drain declaration, the withheld materials include notes and

15

emails concerning the October 2003 meeting where the need for guidance was determined, numerous marked and unmarked drafts of the Notice that were circulated among Butler's subordinates during the drafting process, email messages and typewritten notes addressing the strengths and weakness of the various drafts and the views of the Office's components on the proposals, and a number of routing and transmittal slips that accompanied the drafts as they circulated.  Being "subjective documents" central to the "give-and-take" that preceded the distribution of Notice CC-2004-012, it is clear that the materials could not be disclosed without "stifl[ing] honest and frank communication within the agency."  *Coastal States Gas Corp.*, 617 F.2d at 866.  The Court also concludes that there are no nonexempt, reasonably segregable portions of the documents, and will accordingly grant defendant's Motion for Summary Judgment with respect to plaintiff's FOIA request.

## CONCLUSION

For the reasons stated above, the Court will grant plaintiff's Motion for Summary Judgment in part and order that all written advice withheld on the grounds that it was rendered in less than two hours' time -- including all "background memoranda" -- be made available for public inspection in accordance with the procedures of 26 U.S.C. § 6110.  The Court will otherwise grant defendant's Motion for Summary Judgment with respect to plaintiff's FOIA claims, having concluded that the withheld documents are exempt from disclosure under Exemption 5.


                                         s/
                              _____
                              ELLEN SEGAL HUVELLE
                              United States District Judge

Date: February 27, 2006